UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

SEAN HARRISON, et al.,

    Plaintiffs,

    v.

RESTORATION BUILDERS INC,

    Defendant.

Case No. 2:24-CV-240-CCB-AZ

## OPINION AND ORDER

Plaintiffs Sean Harrison and Elijah Muhm sued Defendant Restoration Builders, Inc., alleging breach of contract and requesting a declaratory judgment. Defendant has not responded, and Plaintiffs have now moved for default judgment on all claims.

### BACKGROUND

Sean Harrison and Elijah Muhm sued Defendant Restoration Builders, Inc. on July 11, 2024. (ECF 5, 21). Plaintiffs were salesmen for Defendant and were compensated primarily from commission on their sales. (ECF 21 ¶¶ 12–13). Plaintiffs alleged that in January 2024, they were pressured to sign new contracts that would have significantly changed their future terms of compensation. (*Id.* ¶¶ 14–15). Plaintiffs allege that after refusing to sign these contracts, they were fired and not paid substantial existing sums that were owed by Defendant. (*Id.* ¶¶ 16, 19). Plaintiffs request these sums under breach of their employment contract. (*Id.* ¶ 19). Plaintiffs were also subject to a noncompete covenant, and requested that this Court issue a declaratory judgment that the covenant

is void. (*Id.* ¶ 25). Defendant did not respond to this complaint, and the Clerk entered a default on March 7, 2025. (ECF 16).

On March 28, 2025, the Court ordered Plaintiffs to file an amended complaint for the limited purpose of removing class allegations in the complaint. (ECF 17, 19). Plaintiffs properly filed this amended complaint April 21, 2025. (ECF 21). The claims against Defendant were not altered in the amended complaint, and Defendant did not make any filings at any time in the course of the case, despite being properly served and notified of the specific claims against it. On May 28, 2026, the Court ordered the Clerk to enter a renewed entry of default against Defendant, which was entered on June 3. (ECF 31; 32).

Plaintiffs initially moved for a hearing on damages (ECF 24), which the Court held was premature because they had not yet moved for default judgment (ECF 26). Plaintiffs have now moved for default judgment, requesting individual damages of $89,000 each. (ECF 27). Plaintiffs also request a declaratory judgment on the noncompete covenant as part of the default judgment. The Court now rules on the motion.

## STANDARD

Federal Rule of Civil Procedure 55(b) dictates that after an entry of default under 55(a), a "party must apply to the court for a default judgment." Courts do not automatically grant default judgment. Specifically, a plaintiff must "demonstrate that they [are] entitled to judgment as a matter of law," assuming "that the factual allegations [in the complaint] are, by reason of the default, true." *Cass Cnty. Music Co. v.*

2

*Muedini,* 55 F.3d 263, 265–66 (7th Cir. 1995). In doing this, a plaintiff must show that the defendant is liable on each cause of action alleged in the complaint. *e360 Insight v. The Spamhaus Project*, 500 F.3d 594, 602 (7th Cir. 2007).

Of course, the Court must also ascertain the amount of damages. Under the law of this circuit, "the allegations in the complaint with respect to the amount of damages are not deemed true," but must be evaluated by the court. *In re Catt*, 368 F.3d 789, 793 (7th Cir. 2004) (citing *Credit Lyonnais Sec. (USA), Inc. v. Alcantara*, 183 F.3d 151, 154–55 (2d Cir. 1999)). A court may not enter default judgment without a hearing on damages unless "the amount claimed is liquidated or capable of ascertainment from definite figures contained in the documentary evidence or in detailed affidavits." *e360 Insight*, 500 F.3d at 602 (citing *Dundee Cement Co. v. Howard Pipe & Concrete Prods., Inc.*, 722 F.2d 1319, 1323 (7th Cir. 1983)).

## ANALYSIS

### A. Declaratory Judgment on Covenant Not to Compete

Plaintiffs have requested a declaratory judgment as a matter of default. Thus, the default judgment standard applies—they must show that they are "entitled to judgment as a matter of law" with regard to a declaratory judgment. *Muedini*, 55 F.3d at 265.

"Declaratory judgment actions serve an important role in our legal system insofar as they permit prompt settlement of actual controversies and establish the legal rights and obligations that will govern the parties' relationship in the future." *Hyatt Int'l Corp. v. Coco*, 302 F.3d 707, 711 (7th Cir. 2002). The Declaratory Judgment Act, 28 U.S.C. § 2201 et seq., empowers a federal court to issue a declaratory judgment "[i]n a case of

actual controversy within its jurisdiction" by "declar[ing] the rights and other legal relations of any interested party." *Id.* § 2201(a). To properly request a declaratory judgment, a party must be able to show that the "feared lawsuit from the other party is immediate and real, rather than merely speculative." *Coco*, 302 F.3d at 712. In other words, "the facts alleged, under all the circumstances, [must] show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *Wisconsin Cent., Ltd. v. Shannon*, 539 F.3d 751, 759 (7th Cir. 2008) (quoting *MedImmune, Inc. v. Genentech, Inc.,* 549 U.S. 118 (2007))). A declaratory judgment has "the force and effect of a final judgment or decree and shall be reviewable as such." 28 U.S.C. § 2201(a).

Here, Plaintiffs allege the existence of a covenant not to compete that forecloses them from participating in "any venture which provides roofing and restoration construction services, and any other business or activity relating thereto or arising therefrom" for "a period of 24 months from the date of termination or the expiration of this Agreement." (ECF 21 ¶ 24).

Plaintiffs' attached exhibit purporting to show communications from Defendant's management substantiates their claim that there is a real possibility of enforcement. (ECF 28-7). This indicates that the controversy is more than speculative. *See Coco*, 302 F.3d at 712. Clarifying the rights of the parties at this time will allow the Plaintiffs to proceed in future employment without "uncertainty, insecurity, and controversy." *Tempco Elec. Heater Corp. v. Omega Eng'g, Inc.*, 819 F.2d 746, 749 (7th Cir. 1987).

First, the Court applies Indiana choice of law rules and finds that Indiana law applies to this claim because there is no conflict. *Great Am. Ins. Co. v. Lexington Ins. Co.*, No. 2:22-CV-345-TLS, 2026 WL 809503, at *11 (N.D. Ind. Mar. 24, 2026); *See also Robert Weed Plywood Corp. v. Canusa Wood Prods., Ltd.*, No. 3:23-CV-30 RLM-MGG, 2023 WL 3057968, at *4 (N.D. Ind. Apr. 24, 2023) ("The court sits in diversity, so ordinarily would apply state substantive law to these contract claims").

Under Indiana law, covenants not to compete are considered "in restraint of trade and disfavored by the law." *Great Lakes Anesthesia, P.C. v. O'Bryan*, 99 N.E.3d 260, 268 (Ind. Ct. App. 2018). Thus, they are enforceable only if they are reasonable, and are "strictly construed against the employer." *Id.*

In evaluating whether a covenant is reasonable, courts look to the scope of restricted activity, as well as the temporal and geographical limitations imposed by the covenant. *See Pathfinder Commc'ns Corp. v. Macy*, 795 N.E.2d 1103, 1113 (Ind. Ct. App. 2003). Here, the scope ("any venture which provides roofing and restoration construction services, and any other business or activity relating thereto or arising therefrom") is far too broad. "Relating thereto" is an ambiguous term, and it is not at all clear which types of activities might fall in or outside of it. Thus, it does not "allow the employee a clear understanding of what conduct is prohibited." *Titus v. Rheitone, Inc.*, 758 N.E.2d 85, 93 (Ind. Ct. App. 2001) (quoting *Smart Corp. v. Grider*, 650 N.E.2d 80, 83 (Ind. Ct. App. 1995)).

Nor is there reason to think that preventing Plaintiffs from engaging in any activity "related to" the roofing or home restoration industry is reasonably tailored to

Defendant's "good will interest in protecting its current customers and [employees]." *MacGill v. Reid*, 850 N.E.2d 926, 932–33 (Ind. Ct. App. 2006). *See also MED-1 Sols., LLC v. Taylor*, 247 N.E.3d 1269, 1280 (Ind. Ct. App. 2024) ("We have found covenants not to compete prohibiting an employee from working for a competitor in any capacity or from competing with portions of the business with which the employee was never associated to be unreasonable because they extend beyond the scope of the employer's legitimate interests.").

Thus, the covenant is unreasonable solely with regard to its scope, and the Court need not address its temporal and geographic limitations. *See Duneland Emergency Physician's Med. Grp., P.C. v. Brunk*, 723 N.E.2d 963, 967 (Ind. Ct. App. 2000). The Court finds that the covenant not to compete between Plaintiffs and Defendant is unenforceable under Indiana law.

### B. Breach of Contract

To support their request for $89,000 each in damages, Plaintiffs have attached a number of documents, including their initial sales contracts, personal affidavits, and spreadsheets outlining their sales performance for the relevant period. In each affidavit, Plaintiffs assert that they are "entitled to the immediate recovery of . . . $89,000 in unpaid bonuses and commissions." (ECF 28-5 at 2; 28-6 at 2). Although the Court appreciates these affidavits, mere assertions are not enough—parties "cannot rest upon conclusory statements in affidavits; [they] must go beyond the pleadings and support [their] contentions with proper documentary evidence." *Foster*, 52 F.4th at 320 (internal quotation marks omitted). *See also Trs. of Teamsters Union No. 142 Pension*

6

*Fund v. Patriot Paving & Excavating LLC*, No. 2:24-CV-349-PPS-AZ, 2025 WL 750303, at *2 (N.D. Ind. Mar. 10, 2025) ("affidavits standing alone, or affidavits that do not explain how damages were calculated, are not enough to support damages in a request for default judgment.").

Plaintiffs have also filed two spreadsheets outlining their sales performance. (ECF 28-3; 28-4). But it is unclear how these spreadsheets support the requested damages amount. In Mr. Harrisson's spreadsheet, the "amount owed" line does appear to reflect the 10 percent bonus discussed in the sales contract. (ECF 28-3; 28-1 at 1). But the spreadsheet appears to be missing rows at the end. Furthermore, itemizing the viewable columns, the "amount owed" on bonuses would appear to be $139,183.99, far higher than Mr. Harrison's requested $89,000 but also lower than the $230,000 Mr. Harrison states he was owed for his work from 2022 to 2023. Plaintiffs state that $89,000 is the amount Mr. Harrison has "yet to receive," but do not explain where this number comes from. Which bonuses were paid and which were not? There are no payment stubs from Defendant attached as evidence. Furthermore, while Plaintiffs' brief states that Mr. Harrison's request "does not account for bonuses earned from 4/11/2023 to the date of termination," that does not explain why those bonuses are excluded. (ECF 28 at 4).

There are similar problems in Mr. Muhm's evidence. (28-4). First, while Plaintiffs' memorandum explains that Mr. Muhm was entitled to a 3 percent bonus rate on most of his sales, this does not appear to reflect the 10 percent bonus rate listed in the sales agreement. (ECF 28 at 4; 28-2). Plaintiffs do not explain this discrepancy. Second, the

spreadsheet lists an "amount owed" total of $26,177.153, far lower than the requested $89,000. (ECF 28-4). The spreadsheet then goes on to say that some of the total amount has already been paid, but that the requested total adds up to $89,000 when added to the "remaining 2023 and 2024 bonuses." (*Id.*). These bonuses are not listed or explained, nor does the sheet specify how much of the $26,177.153 is actually owed. Like Mr. Harrison's evidence, there are inconsistencies in the evidence and gaps in the evidentiary support for the requested amounts.

Finally, given that the bonus structure appears to have been relative to the specific sales performance of an employee, the Court finds it odd that both Plaintiffs request exactly the same amount. Is this amount intentionally lower than the actual amounts owed to each party? Plaintiffs do not explain this.

In light of these deficiencies, the Court finds that the submitted evidence does not permit a directly ascertainable damages amount. Default judgment is not granted at this time. In order to allow for speedy resolution of this case and the damages amounts, the Court refers this case to Magistrate Judge Abizer Zanzi to conduct a hearing on damages. At that hearing, the parties should be prepared to provide further substantiating evidence and explain the deficiencies noted in this order.

CONCLUSION

The Court hereby **GRANTS** Plaintiffs' motion for default judgment (in part). (ECF 27). The Court **GRANTS** Plaintiffs' motion for a declaratory judgment and hereby **DECLARES** that the employment covenant not to compete between Plaintiffs Elijah Muhm and Sean Harrison and Defendant Restoration Builders, Inc., is unenforceable

8

under Indiana law. The Court **DENIES** Plaintiffs' motion as to the request for damages, without prejudice. The Court **REFERS** this case to Magistrate Judge Abizer Zanzi for a hearing to sufficiently ascertain the appropriate damages amounts and make a recommendation to the Court accordingly.

SO ORDERED on June 4, 2026.

/s/*Cristal C. Brisco*
CRISTAL C. BRISCO, JUDGE
UNITED STATES DISTRICT COURT